## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **v.** } | Case No.: 4:18-cr-00376-RDP-JEO-2 |
| } | |
| **JOHN LADD BUCKINGHAM,** } | |
| } | |
| **Defendant.** } | |

### MEMORANDUM OPINION

This case is before the court on three separate motions filed by Defendant Dr. John Ladd Buckingham: (1) his first motion to dismiss the indictment (Doc. # 29); (2) his second motion to dismiss the indictment (Doc. # 30); and (3) his motion to strike surplusage from the indictment (Doc. # 31).[1]

In August 2018, the United States charged Dr. Buckingham in a 21-count indictment with various controlled substance offenses and other crimes arising out of his work as a physician at a pain clinic in Moody, Alabama. (Doc. # 1). Dr. Buckingham now seeks dismissal of the indictment based on the following assertions: (1) the government's preindictment delay in prosecution violated his Due Process rights; (2) Counts 1 and 19 are duplicitous; (3) the indictment contains multiplicitous counts; (4) Count 20 insufficiently alleges criminal conduct; and (5) the Controlled Substances Act is unconstitutionally vague as applied to him. He also asks the court to strike certain allegedly surplus and prejudicial language from the indictment. As

---

[1] Defendant initially filed yet another motion to dismiss the indictment that alleged six grounds for dismissal but provided no argument or analysis in support of his claims. (Doc. # 24). The court gave Defendant until October 26, 2018 to submit evidence in support of his claims (Doc. # 28), and Defendant filed two amended motions to dismiss on that date (Docs. # 29, 30). In the two amended motions to dismiss, Defendant abandoned certain claims raised in his initial motion and raised new claims not mentioned in the initial motion. The two amended motions to dismiss (Docs. # 29, 30) supersede Defendant's initial motion to dismiss (Doc. # 24), and the court therefore considers only the amended motions to dismiss. By separate Order, the Clerk of Court will be directed to administratively terminate Defendant's initial motion to dismiss (Doc. # 24).

explained below, none of Dr. Buckingham's arguments hold water. Accordingly, his motions to dismiss and motion to strike are all due to be denied.

## I. Factual and Procedural Background

The indictment charges Dr. Buckingham and two other Defendants with various crimes arising out of their involvement with a pain clinic in Moody, Alabama. (Doc. # 1). According to the indictment, Dr. Buckingham was a licensed physician who worked at the pain clinic and was authorized to prescribe controlled substances, but was not himself a pain management specialist. (*Id.* at ¶ 5). The indictment alleges that, rather than providing legitimate pain management services, Dr. Buckingham and others at the clinic ran a high-volume "pill mill" operation in which large numbers of patients were prescribed schedule II controlled substances without first receiving proper medical evaluations and despite obvious signs that the patients were diverting and/or abusing the controlled substances. (*Id.* at ¶¶ 22-41).

Count 1 of the indictment charges Dr. Buckingham with conspiracy to violate 21 U.S.C. § 841(a)(1) by prescribing numerous schedule II controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 846. (*Id.* at ¶ 21). Counts 2 through 18 charge that, on seventeen separate occasions, Dr. Buckingham unlawfully dispensed schedule II controlled substances by means of prescriptions issued outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1). (*Id.* at ¶¶ 43-44). Count 19 charges Dr. Buckingham with maintaining a premises for the purpose of unlawfully distributing a controlled substance, in violation of 21 U.S.C. § 856(a)(1). (*Id.* at ¶ 46). Finally, Count 20 charges Dr. Buckingham with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h). (*Id.* at ¶ 47).

After an approximately three-year investigation, the United States indicted Dr.

Buckingham on August 29, 2018. Dr. Buckingham now moves to dismiss the indictment or alternatively to strike certain language from the indictment for a variety of reasons, discussed below.

**II.     Standard of Review**

A federal court may dismiss a criminal prosecution based on "a defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and must not join "two or more offenses in the same count" or charge "the same offense in more than one count," Fed. R. Crim. P. 12(b)(3)(B)(i)-(ii). "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998) (en banc) (internal quotation marks omitted). "In determining whether an indictment is sufficient," the court must "read it as a whole and give it a common sense construction." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (internal quotation marks omitted).

**III.    Analysis**

Dr. Buckingham has moved to dismiss this prosecution on several grounds. First, he argues that the government's preindictment delay in bringing this prosecution has prejudiced his ability to mount an effective defense and therefore violated his Fifth Amendment right to Due Process. Second, he claims that Counts 1 and 19 of the indictment are duplicitous because they each charge two or more separate and distinct offenses. Third, he claims that the indictment charges a single offense -- the illegal distribution of a controlled substance -- in multiple counts,

rendering the indictment multiplicitous. Fourth, he argues that Count 20 fails to allege facts sufficient to support the charge that Dr. Buckingham knowingly and voluntarily joined a conspiracy to engage in money laundering. Finally, Dr. Buckingham argues that the Controlled Substances Act provisions charged in the indictment are unconstitutionally vague as applied to him.

Alternatively, Dr. Buckingham has also moved to strike what he claims is surplus and prejudicial language from the indictment. Specifically, Dr. Buckingham claims that the first 19 paragraphs of the indictment, which provide factual details regarding the operation of the pain clinic, are surplus and prejudicial and that the term "pill mill" in Count 1 is similarly prejudicial and conclusory.

The court addresses each of Dr. Buckingham's arguments below but ultimately concludes that all are without merit. Accordingly, Dr. Buckingham's motions to dismiss and motion to strike are due to be denied.

### A. Defendant's Preindictment Delay Claim Fails as a Matter of Law

The Supreme Court has long recognized that lengthy delays between the commission of a crime and arrest and prosecution for the crime may prejudice a defendant's ability to defend himself. *United States v. Marion*, 404 U.S. 307, 320-22 (1971). Ordinarily, statutes of limitations provide "the primary guarantee" "against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (internal quotation marks omitted). But even when a prosecutor brings charges within the statutorily prescribed limitations period, the Fifth Amendment's Due Process Clause still "has a limited role to play in protecting against oppressive delay." *Id.*

To establish a Due Process violation based on preindictment delay, a defendant must

show "(1) actual prejudice to their defense from the delay; and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage." *United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995). Dr. Buckingham's preindictment delay claim fails because he has failed to allege, much less offered to prove, that the government deliberately delayed his prosecution to gain a tactical advantage.

Dr. Buckingham argues only that the delay has caused him actual prejudice and that the delay has in fact given the government a tactical advantage. (*See* Doc. # 29 at 1-3, 10). Nowhere does he allege or offer to prove that the government's delay in indicting him was a deliberate choice calculated to give the government a tactical advantage in this prosecution. The government "does not bear the burden of explaining the reason for [its] delay." *United States v. Ramirez*, 491 Fed. App'x 65, 70 (11th Cir. 2012). Nevertheless, it has explained that the three-year delay in this case was for investigative purposes, which is perfectly proper (and indeed, desirable) under the Constitution. *See Thomas*, 62 F.3d at 1339-40; *Lovasco*, 431 U.S. at 795 ("Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt."). Because Dr. Buckingham bears the burden of showing that the preindictment delay was deliberate *and* for the purpose of gaining a tactical advantage, and because Dr. Buckingham has given no reason to think that the government's delay was in bad faith, his motion to dismiss the prosecution based on preindictment delay is due to be dismissed. *See Thomas*, 62 F.3d at 1339 (rejecting the defendants' Due Process claim based on a fifty-five month preindictment delay because they failed to meet "their burden of proving intentional delay for tactical advantage"); *Ramirez*, 491 Fed. App'x at 70 (affirming district court's denial of motion to dismiss for preindictment delay

based merely on the conclusory assertion that the government deliberately delayed the indictment to gain a tactical advantage, without any supporting factual basis for the claim).

### B. Counts 1 and 19 of the Indictment Are Not Duplicitous

Federal Rule of Criminal Procedure (8)(a) allows an indictment to charge a defendant "in separate counts" with two or more offenses. The Eleventh Circuit has interpreted that requirement to forbid "duplicitous" counts in an indictment. *United States v. Schlei*, 122 F.3d 944, 979 (11th Cir. 1997). "A count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." *Id.* at 977 (quoting *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir.1989)). "A duplicitous count poses three dangers: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." *Id.* (internal quotation marks omitted).

Dr. Buckingham argues Count 1 is duplicitous because it charges him with both conspiring to illegally distribute controlled substances in violation of 21 U.S.C. § 846 and maintaining a facility to distribute controlled substances in violation of 21 U.S.C. § 856(a)(1). But Count 1 does nothing of the sort. The indictment makes clear that Count 1 charges a violation of 21 U.S.C. § 846 (conspiracy to distribute drugs) and that Count 19 charges a violation of 21 U.S.C. § 856(a)(1) (maintaining a premises for the purpose of unlawful narcotic distribution). (*See* Doc. # 1 at 5-6, 14). Those are "separate and distinct" offenses which have different elements and require different proof to secure a conviction. *Burton*, 871 F.2d at 1573. To be sure, Count 1 alleges facts that are relevant to proving both offenses. Because Count 1 charges Dr. Buckingham with conspiring to distribute controlled substances as part of his employment at the pain clinic, it describes the clinic's operations in some detail. (*See* Doc. # 1 at

¶¶ 22-26). Some of those facts are no doubt also relevant to Count 19's charge of using or maintaining a premises for the purpose of unlawful narcotic distribution, but that does not render Count 1 duplicitous. A duplicitous count is one that charges two or more separate *offenses*, not one that merely describes factual matter relevant to proving more than one criminal offense. Indeed, the Federal Rules of Criminal Procedure explicitly contemplate that one count of an indictment may contain factual information relevant to another count. *See* Fed. R. Crim. P. 7(c)(1) ("A count may incorporate by reference an allegation made in another count."). Count 1 is not duplicitous.

Dr. Buckingham's argument that Count 19 is duplicitous is similarly misguided. He argues that the "incorporation of paragraphs 1-44 into Count 19 further adds to the duplicitous nature of Counts 1 and 19." (Doc. # 29 at 8). But as explained above, it is perfectly proper under the Rules for one count of an indictment to incorporate by reference an allegation made in another count. *See* Fed. R. Crim. P. 7(c)(1). Dr. Buckingham's claim that incorporation by reference renders Count 19 duplicitous is thus wholly without merit. His motion to dismiss the indictment based on duplicitous counts is due to be dismissed.

### C. The Indictment Is Not Multiplicitous

"Multiplicity is the charging of a single offense in more than one count." *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991). Multiplicitous counts create two dangers. "First, the defendant may receive multiple sentences for the same offense." *Id.* "Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes—not one." *Id.*

Dr. Buckingham claims the indictment is multiplicitous because different counts contain the same factual allegations. (*See* Doc. # 29 at 8) ("Count [1] alleges the illegal dispensing of

controlled substances in general and through the operation of a pill mill facility. Count 19 alleges the same thing under a different statute."). But as explained above, there is nothing improper about reciting the same factual allegations in different counts of an indictment where those facts show the defendant committed two or more distinct statutory offenses. The multiplicity doctrine guards against charging a single *offense* in more than one count of the indictment. It does not prohibit restating similar *factual allegations* in more than one count of the indictment, a practice explicitly contemplated by the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 7(c)(1). Because the indictment does not charge the same offense in more than one count, Dr. Buckingham's motion to dismiss the indictment on that basis is due to be denied.

### D. Count 20 of the Indictment Adequately Alleges a Violation of 18 U.S.C. § 1956(h)

Count 20 charges Dr. Buckingham with conspiring to engage in promotional money laundering in violation of 18 U.S.C. § 1956(h). The offense of promotional money laundering is defined in 18 U.S.C. § 1956(a)(1)(A)(i) and requires proof that: "(1) the defendant conducted or attempted to conduct a financial transaction; (2) the defendant knew that the funds involved in the transaction represented the proceeds of illicit activity . . . ; (3) the funds involved were in fact the proceeds of unlawful activity; and (4) the defendant conducted the financial transaction with the intent to promote the specified unlawful activity." *United States v. Johnson*, 440 F.3d 1286, 1294 (11th Cir. 2006). The offense of conspiring to engage in money laundering under § 1956(h) requires proof of: "(1) agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant." *United States v. Broughton*, 689 F.3d 1260, 1280 (11th Cir. 2012).

Dr. Buckingham argues Count 20 must be dismissed because it fails to allege facts sufficient to support a conviction for conspiracy to engage in promotional money laundering. In

particular, Dr. Buckingham claims that Count 20's failure to allege that he acted "willfully" or knew that any proceeds from the clinic were from unlawful activities requires dismissal of the count. (Doc. # 29 at 9). Dr. Buckingham's argument is misplaced. For one thing, the term "willful" does not appear in either of the statutory provisions charged in Count 20, and Dr. Buckingham does not explain why an allegation of "willfulness" is required to charge him with the offense of conspiracy to engage in promotional money laundering. *See United States v. Tobin*, 676 F.3d 1264, 1280 (11th Cir. 2012) ("[Where the] language of [a] statute does not refer, in any way, to willfulness . . . the government only needs to prove that the defendant acted knowingly."). More significantly, the government need not show (or allege) that Dr. Buckingham himself satisfied each element of promotional money laundering under § 1956(a)(1)(A)(i), including having knowledge that the laundered funds were the proceeds of illicit activity. Instead, to convict Dr. Buckingham of *conspiracy* to engage in promotional money laundering, the government need only prove that Dr. Buckingham and his coconspirator(s) agreed to engage in promotional money laundering and that Dr. Buckingham, knowing the unlawful purpose of the plan, voluntarily joined the conspiracy. *Broughton*, 689 F.3d at 1280. Count 20 more than adequately alleges those essential facts. (*See* Doc. # 1 at ¶ 47) (alleging that Dr. Buckingham and others "knowingly" agreed with each other to commit the offense of promotional money laundering and thereby violate § 1956(a)(1)(A)(i)). Dr. Buckingham's motion to dismiss Count 20 of the indictment is accordingly due to be denied.

### E. The Controlled Substances Act Is Not Unconstitutionally Vague as Applied to Defendant

Dr. Buckingham next argues that the Controlled Substances Act ("CSA") provisions under which he is charged are unconstitutionally vague as applied to him, in violation of the Fifth Amendment's Due Process Clause. This is so, Dr. Buckingham contends, "because the

[CSA's] statutory framework, controlling regulatory authority, and case law fail to define the conduct proscribed by the Act with sufficient definiteness that a physician would know what conduct is prohibited," thus rendering the law so standardless as to invite "arbitrary and discriminatory enforcement." (Doc. # 30 at 1). For the following reasons, the court disagrees. The CSA is not unconstitutionally vague as applied to Dr. Buckingham.

### 1. Legal and Factual Background

The CSA makes it "unlawful for any person knowingly or intentionally" to "distribute, or dispense . . . a controlled substance" "[e]xcept as authorized" by the CSA. 21 U.S.C. § 841(a)(1). Another provision of the CSA makes it a crime to conspire to violate § 841(a). *Id.*, § 846. Many physicians regularly "distribute" or "dispense" controlled substances as part of their medical practice by means of writing prescriptions. Thus, their liability under the CSA thus turns on whether they are "authorized" to do so by the Act.

The CSA authorizes "[p]ersons registered by the Attorney General" to dispense controlled substances "to the extent authorized by their registration." 21 U.S.C. § 822(b). The Attorney General, in turn, is authorized to "promulgate rules and regulations . . . relating to the registration and control of the . . . dispensing of controlled substances." 21 U.S.C. § 821. Among the regulations the Attorney General has promulgated is the rule that "[a] prescription for a controlled substance . . . must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). An order "issued not in the usual course of professional treatment . . . is not a prescription" for purposes of the CSA, and "the person issuing" "such a purported prescription" "shall be subject to" the criminal penalties of 21 U.S.C. § 841. *Id.*; *see also United States v. Joseph*, 709 F.3d 1082, 1094 (11th Cir. 2013). Thus, to convict a registered physician under § 841, the government

must prove that he knowingly and intentionally dispensed controlled substances "for other than legitimate medical purposes in the usual course of professional practice." *United States v. Ignasiak*, 667 F.3d 1217, 1228 (11th Cir. 2012).

The government alleges that while Dr. Buckingham was authorized by the Attorney General to prescribe schedule II controlled substances, he issued prescriptions for such substances "outside the usual course of professional practice and not for a legitimate medical purpose." (Doc. # 1 at ¶¶ 5, 43). Dr. Buckingham responds that because the requirement that controlled substances be prescribed only "for a legitimate medical purpose" and "in the usual course of . . . professional practice," 21 C.F.R. § 1306.04(a), is unconstitutionally vague, he cannot be prosecuted for violating the requirement.

### 2. Analysis

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that the government "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

The animating principle of vagueness doctrine's fair-notice prong "is that no [person] shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617 (1954). With respect to the arbitrary-enforcement prong, "vagueness doctrine requires that legislation contain minimal guidelines to govern law enforcement in order to prevent arbitrary and discriminatory law enforcement." *United States v. Biro*, 143 F.3d 1421, 1430 (11th Cir. 1998). But the Constitution's prohibition of

vague criminal laws does not mean that statutes must "define every factual situation that may arise." *Id.* Nor does "the mere fact that close cases can be envisioned" under a statute "render[ the] statute vague." *United States v. Williams*, 553 U.S. 285, 305 (2008). After all, "[c]lose cases can be imagined under virtually any statute," and "[t]he problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.*

Dr. Buckingham claims the CSA's requirement that controlled substances be prescribed only "for a legitimate medical purpose" and "in the usual course of . . . professional practice," 21 C.F.R. § 1306.04(a), violates both the fair-notice and arbitrary-enforcement prongs of vagueness doctrine. But Dr. Buckingham's argument is foreclosed by binding precedent.

In *United States v. Collier*, 478 F.2d 268, 270-72, 274 (5th Cir. 1973),[2] the former Fifth Circuit rejected a physician's argument that § 841(a)(1) of the CSA and its implementing regulations were unconstitutionally vague as applied to physicians and affirmed the physician's conviction. Congress enacted the CSA only three years before *Collier* as Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970. Controlled Substances Act, Pub. L. No. 91-513, 84 Stat. 1242. The Act and its implementing regulations made it "illegal for a physician to dispense . . . a schedule II controlled substance other than 'in the course of his professional practice.'" *Collier*, 478 F.2d at 270-71.[3] Dr. Collier pleaded guilty to six counts of violating 21 U.S.C. § 841(a)(1) by distributing the controlled substance methadone while not acting in the usual course of professional practice. *Id.* at 270. He argued that the words "in the course of his professional practice" did not adequately "warn the physician of what conduct is

---

[2] All decisions of the Fifth Circuit issued on or before September 30, 1981 are binding precedent within the Eleventh Circuit. *Bonnard v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[3] At the time *Collier* was decided, 21 U.S.C. § 841(a) and the CSA's implementing regulations contained materially identical language to the statute and regulations as they exist today, including the requirement that "[a] prescription for a controlled substance . . . must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 478 F.2d at 270-71 n.2.

proscribed" and that the law was "without objective standards" and thus "subject to diverse interpretation." *Id.* at 271.

The court rejected Dr. Collier's argument and held that the CSA was not unconstitutionally vague as applied to physicians. *Id.* at 272. The court reasoned that the language "in the course of professional practice" restricts a physician "to dispensing or prescribing drugs in the bona fide treatment of a patient's disease" and does not "under the guise of treatment" permit a physician either "to sell drugs to a dealer" or to "distribute drugs intended to cater to cravings of an addict." *Id.* at 271-72. This construction of the CSA gives physicians adequate notice of what the Act proscribes and limits the discretion of law enforcement in enforcing the Act.

The court in *Collier* recognized that "what constitutes bona fide medical practice must be determined upon consideration of evidence and attending circumstances," but it rejected the argument (pressed here by Dr. Buckingham) that "statutes affecting medical practice [must] delineate the precise circumstances constituting the bounds of permissible practice." *Id.* at 272 (brackets, emphasis, and internal quotation marks omitted). It further observed that the Supreme Court had upheld multiple statutes against vagueness challenges that required physicians, on pain of criminal punishment, to correctly exercise their professional judgment to determine whether an abortion was "necessary" (physicians who performed abortions found to be "unnecessary" could be criminally prosecuted). *Id.* (citing *United States v. Vuitch*, 402 U.S. 62, 91 (1971) and *Doe v. Bolton*, 410 U.S. 179, 192 (1973)). Thus, the fact that the CSA similarly required physicians to "make a professional judgment" regarding whether to prescribe controlled substances to a patient -- and imposed criminal sanctions on physicians who abused their judgment to prescribe controlled substances other than "in the bona fide treatment of a patient's

13

disease" -- could not render the CSA unconstitutionally vague as applied to physicians, the court explained. *Id.*

Under *Collier*, Dr. Buckingham's argument that the CSA is unconstitutionally vague as applied to him is entirely without merit. He makes the same arguments that the Fifth Circuit rejected in *Collier*—that the CSA's requirement that controlled substances be prescribed for a "legitimate medical purpose . . . in the usual course of [a physician's] professional practice" fails to provide adequate notice to physicians of what prescribing practices violate the CSA and is so standardless that physicians must "stake their livelihood and liberty on the whims of Government regulators." (Doc. # 30 at 3, 19). Dr. Buckingham attempts to distinguish *Collier* on the ground that it "was decided well before the legal framework for the CSA's application to physicians evolved into its current state of enigmatic morass." (Doc. # 30 at 20). But Dr. Buckingham has offered no reason to think that courts have been unable "to craft a principled and objective standard" for discerning what prescribing practices run afoul of the CSA's requirement that controlled substances be prescribed for a legitimate medical purpose and in the usual course of professional practice. *Johnson*, 135 S. Ct. at 2558. To the contrary, a well-established body of case law provides physicians with ample notice of the types of prescribing practices that violate the CSA.

Dr. Buckingham cites post-*Collier* decisions involving physician prosecutions under the CSA which he maintains are "inconsistent and, in some cases, wholly contradictory" as evidence that the CSA is unconstitutionally vague as applied to physicians. (Doc. # 30 at 14-16). But the purportedly "inconsistent" decisions Dr. Buckingham identifies[4] concern only the applicable mens rea and the relevant standard of care (national or local) that should be incorporated into

---

[4] *See Joseph*, 709 F.3d at 1094-97; *United States v. Tobin*, 676 F.3d 1264, 1278-83 (11th Cir. 2012); *United States v. Ignasiak*, 667 F.3d 1217, 1228 (11th Cir. 2012); *United States v. Merrill*, 513 F.3d 1293, 1305-06 (11th Cir. 2008); *United States v. Williams*, 445 F.3d 1302, 1309-10 (11th Cir. 2006).

**14**

jury instructions in physician prosecutions under the CSA. They do not suggest that courts have struggled to define what prescribing practices qualify as "not for a legitimate medical purpose" and "outside the usual course of professional practice." Quite to the contrary, a long line of decisions affirming physicians' convictions under the CSA adequately identify certain prescribing practices that suggest a physician dispensed controlled substances in violation of the CSA. Those practices include: (1) prescribing an inordinately large quantity of controlled substances; (2) issuing large numbers of prescriptions; (3) failing to physically examine patients; (4) warning patients to fill prescriptions at different drug stores; (5) issuing prescriptions to patients known to be delivering the drugs to others; (6) prescribing controlled drugs at intervals inconsistent with legitimate medical treatment; (7) using street slang rather than medical terminology for the drugs prescribed; (8) issuing prescriptions where there exists no logical relationship between the drugs prescribed and the treatment of the patient's alleged condition; and (9) writing more than one prescription on a single occasion and postdating the additional prescriptions to spread them out. *United States v. Rosen*, 582 F.2d 1032, 1036 (5th Cir. 1978); *see also, e.g.*, *United States v. Bourlier*, 518 Fed. App'x 848, 851 (11th Cir. 2013) (affirming physician's conviction under the CSA based on presence of *Rosen* factors); *Joseph*, 709 F.3d at 1104 (same); *Ignasiak*, 667 F.3d at 1229 (affirming physician's conviction under CSA based in part on evidence that he wrote more than 43,000 prescriptions for controlled substances in a five-year period); *Merrill*, 513 F.3d at 1299-1303 (affirming physician's conviction under CSA where evidence showed he wrote more than 33,000 prescriptions in three-year period, prescribed the same patient multiple controlled substances in a given visit, reauthorized prescriptions for the same controlled substance within less than a month of each other, and frequently prescribed high doses of controlled substances). These decisions (among others) show that the courts have

successfully crafted "a principled and objective standard" for ascertaining the type of physician conduct that violates the CSA. *Johnson*, 135 S. Ct. at 2558. Dr. Buckingham's vagueness challenge to the CSA therefore fails.[5]

Dr. Buckingham also asserts that dismissal of the CSA counts (Counts 1-18) on vagueness grounds would require the dismissal of the remaining counts against him for maintaining a drug-involved premises (Count 19) and conspiracy to engage in money laundering (Count 20). (Doc. # 30 at 20). But Dr. Buckingham provides no argument or analysis for why dismissal of the CSA counts would require dismissal of the drug-involved premises or money laundering conspiracy charges. And, in any event, because the court rejects Dr. Buckingham's vagueness challenge to the CSA, it likewise rejects his request to dismiss the remaining counts against him. Dr. Buckingham's motion to dismiss the indictment on vagueness grounds is accordingly due to be denied.[6]

### F. Defendant's Motion to Strike Is Due to Be Denied

Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment." *See* Fed. R. Crim. P. 7(d). But a court should only strike language from an indictment if "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Huppert*, 917 F.2d 507, 511 (11th Cir. 1990). As the Eleventh Circuit has repeatedly observed, "this is a most exacting standard." *Id.* (internal quotation marks omitted); *United States v. Brye*, 318 Fed. App'x 878, 880 (11th Cir. 2009).

Dr. Buckingham moves to strike paragraphs 1-19 of the indictment, which provide

---

[5] The court emphasizes that whether Dr. Buckingham's conduct in fact violated the CSA is an issue for trial, and it may well turn out to be a close question. But, as noted above, the existence of "close cases" under a statute does not render the statute unconstitutionally vague, as the problem of close cases is resolved "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 305-06.

[6] In the event the court denied his motion to dismiss, Dr. Buckingham requested that the court give several jury instructions at trial. (Doc. # 30 at 20-21). Dr. Buckingham's request for particular jury instructions is premature. The court will consider the appropriate jury instructions to give at trial at a later date.

background information relevant to multiple counts of the indictment, and the reference to a "pill mill" in paragraph 22 of the indictment. (Doc. # 31 at 1-2). He is not entitled to this relief because those parts of the indictment are neither irrelevant to the charged crimes nor unfairly prejudicial to Dr. Buckingham. Paragraphs 1-19 constitute the indictment's introduction and describe the entities, parties, facts, and legal framework common to many counts of the indictment. More particularly, paragraphs 8-19 are devoted entirely to describing the Controlled Substances Act and its implementing regulations and do not discuss the facts of Dr. Buckingham's case at all. And, the court's review of paragraphs 1-7 reveals no language that is both irrelevant to the charged crimes and unfairly prejudicial to Dr. Buckingham. Finally, the term "pill mill" is certainly relevant to the charges brought against Dr. Buckingham, and the court finds that the term is not unfairly prejudicial or inflammatory. Numerous other courts have likewise concluded that the term "pill mill" is not overly prejudicial and that its use at trial does not violate Federal Rule of Evidence 403. *See United States v. Guzman*, 571 Fed. App'x 356, 360-61 (6th Cir. 2014) (collecting cases). Further, and in any event, it is not the court's practice to provide the jury with a copy of the indictment. Accordingly, Dr. Buckingham's motion to strike is due to be denied.

   IV.   **Conclusion**

For the reasons explained above, Defendant's motions to dismiss the indictment and motion to strike surplusage from the indictment are due to be denied. An Order consistent with this Memorandum Opinion will be entered.

   **DONE** and **ORDERED** this December 13, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE