# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| | } | |
| v. | } | **Case No.: 2:18-cr-376-RDP-SGC-2** |
| | } | |
| JOHN LADD BUCKINGHAM, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION ADOPTING THE MAGISTRATE'S REPORT AND RECOMMENDATION

Before the court is Defendant John Ladd Buckingham's Motion for Order of Competency to Stand Trial (Doc. # 44), Magistrate Judge Ott's Report and Recommendation (*i.e.*, "R&R") (Doc. # 136), and the Government's Objection to Report and Recommendation (Doc. # 140). Defendant is an 87-year-old male suffering from dementia. (Docs. # 57, 70). The court, having considered all the evidence and for the reasons set forth below, finds that Defendant is currently incompetent to stand trial.

## I.  Procedural History[1]

Defendant was indicted to twenty (20) counts for violating the Controlled Substances Act. (Doc. # 1). In Count One, the Government alleges that Defendant, then a licensed physician, conspired to distribute controlled substances "outside the usual course of professional practice and not for a legitimate medical purpose," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. (*Id.* at ¶¶ 20-41). In Counts Two (2) through Eighteen (18), Defendant is charged with unlawful distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. (*Id.* at

---

[1] Judge Ott's R&R reviewed the procedural history of this case in detail. (*See* Doc. # 136). The court nonetheless summarizes the background of this case, the expert opinions that are relevant to the question of Defendant's competency, and the Government's objections to Judge Ott's R&R.

¶¶ 42-44). Count Nineteen (19) charges that he unlawfully maintained a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1). (*Id*. at ¶¶ 45-46). And, Count Twenty (20) alleges that he conspired with others to launder money, in violation of 18 U.S.C. § 1956(h). (*Id.* at ¶¶ 47-58). These types of conspiracies and activities are related to what are colloquially known as "pill mills." The Government alleges that these criminal activities occurred during the period from January 1, 2012 through December 31, 2015. (Doc. # 136 at 1).

After being indicted to the charges, Defendant pleaded not guilty and entered an insanity defense pursuant to Federal Rule of Criminal Procedure 12.2. (Docs. # 44, 46, 104). Defendant requested a hearing so that the court can determine whether he was competent to stand trial. (Docs. # 46, 104). Defendant's counsel supported the position that Defendant is incompetent to stand trial with Dr. H. Randall Griffith's forensic neuropsychological evaluation. (Doc. # 57). In response, the Government moved for a psychiatric evaluation of Defendant (Doc. #49). Defendant then reversed course and moved to withdraw his insanity defense and request for a competency hearing, which the government opposed. (Docs. # 56, 59). He also moved to dismiss the charges against him under Federal Rule of Criminal Procedure 48. (Doc. # 104).

Following this crossfire of motions, the court ordered an independent psychiatric evaluation of Defendant. (Doc. # 62). The court ordered Defendant to meet with Dr. Rocksheng Zhong for at least two psychiatric evaluation sessions so that Dr. Zhong could opine on Defendant's condition. (*Id*.; Docs. # 57, 126-2). The court further encouraged those who frequently interact with Defendant to meet with Dr. Zhong. (Doc. # 62). Dr. Zhong has now filed his evaluation. (Doc. # 70).

## II.   Expert Reports, the Competency Hearing, and the Government's Objections

At this stage, the court has before it a well-developed record of Defendant's mental health and Judge Ott's R&R. In reviewing the R&R (Doc. # 136) and the Government's Objections to the R&R (Doc. # 140), the court has evaluated the following evidence.

A.      Dr. Griffith's Report

On February 28, 2019, Dr. H. Randall Griffith, a board-certified clinical neuropsychologist, submitted a neuropsychological evaluation of Defendant to the court. (Doc. # 57). Dr. Griffith's conclusion is that "Dr. Buckingham lacks sufficient present ability to assist in his defense by consulting counsel with reasonable degree of rational understanding of the facts and legal proceedings against him." (*Id*. at 9).

Dr. Griffith's evaluation was anything but conclusory. Rather, his conclusions are supported by an in-depth analysis of Defendant's condition. In conducting his evaluation, Dr. Griffith reviewed Defendant's health records and personal information, interviewed Defendant's family members, reviewed Defendant's correspondence, and interviewed Defendant. (*Id*. at 1). He also administered several psychological tests to measure Defendant's cognitive functioning. (*Id*. at 6). The tests show that some of Defendant's cognitive abilities are impaired while others remain proficient. (*Id*. at 8). Specifically, Defendant's "attention, expressive language, visual skills, delayed memory, and executive function" are all impaired while his "immediate memory and abstraction" are "intact." (*Id*.).

Based on all the information available to Dr. Griffith, especially the psychological test results, which showed that Defendant's "overall cognitive severity" was "moderately impaired" based on his age and estimated "premorbid functioning," he opined that Defendant suffered from a "Major Neurocognitive Disorder" (*i.e.*, dementia). (*Id*. at 6-7). He also concluded that Defendant's cognitive deficiencies were not the result of malingering or any other disorder. (*Id*. at 8).

Dr. Griffith found that Defendant's condition leaves him unable to perform important tasks to assist counsel in his defense. This is so, according to Dr. Griffith, because Defendant is "highly

distractible and unable to consistently maintain train of thought, [has] severe memory loss, particularly after an intervening time period, and [has] impairments in divided attention and mental flexibility, which would render him unable to hold information in consciousness and be able to rationally make decisions regarding such information." (*Id*. at 9-10).

B.      **Dr. Zhong's Report**

Upon the Government's request, the court ordered an evaluation of Defendant. (Doc. # 62). Dr. Rocksheng Zhong, a forensic psychiatrist, evaluated Defendant and filed a report containing his findings. (Docs. # 70). Dr. Zhong evaluated Defendant for six and one-half hours on two separate occasions. (*Id*. at 1). Dr. Zhong also reviewed Dr. Griffith's report, the tests conducted by Dr. Griffith, Defendant's medical records, and questioned Defendant's daughter, attorney, and primary Psychiatrist. (*Id*. at 1-2). In is his opinion (and his opinion is consistent with that of Dr. Griffith), Defendant suffers from dementia (*Id*. at 12). Dr. Zhong also agrees with Dr. Griffith that Defendant's dementia renders him unable to assist his counsel in adequately preparing for his defense. (*Id*. at 11-12).

Dr. Zhong explained why Defendant's dementia causes him to be incompetent to stand trial. His conclusion, based on his interview, is that "[Defendant] did not demonstrate an understanding of the charges against him, though [he] did demonstrate an understanding of general court procedures and personnel." (*Id*. at 9). Defendant was able to discuss the role of the judge, the jury, the prosecution, "courtroom decorum," and the difference between proceeding to trial and pleading guilty in abstract terms. (*Id*. at 10). Similarly, Defendant was able to discuss the types of crimes he is charged with in the abstract. (*Id*. at 9). But, when discussing *his* proceedings, Defendant struggled to engage with Dr. Zhong. For example, he was unable to explain how the crime of conspiracy to distribute a controlled substance applied to the conduct the Government alleges. (*Id*.). Defendant was also unable to recall the allegations in the Indictment for the conspiracy to commit money laundering charge. (*Id*.).

During the second evaluation period, Dr. Zhong reports that he observed the following:

> I attempted to educate [Defendant] about the allegations listed in the indictment. Despite extensive and repeated efforts to provide information about the charges, [Defendant's] deficits persisted. On review, following over two hours of discussion concerning his legal situation, he said, "The number 15 sticks in mind, but you said there were more [charges] than that…[I am accused of] writing prescriptions for narcotics that I shouldn't have…I don't remember the legal term…You said something about maintaining a business or something to do with that, but I don't know the name of it…There was Conspiracy but I don't remember what the conspiracy was about." Regarding the associated penalties, he said, "A whole lot of years in jail." He said incorrectly that his potential fines totaled "75 million dollars."

> . . . .

> [Defendant] did not demonstrate the ability to assist in his defense. He was not able to engage in a rational discussion of his legal situation, and he did not exhibit the ability to work effectively with his defense attorney.

> [Defendant's] memory impairments prevented him from participating in a meaningful dialogue about his case. He had difficulty retaining and assimilating information pertaining to his legal situation. Without an understanding of his charges, he could not go on to discuss legal strategy, evaluate aspects of his case, or explain the rationale behind his conclusions. At times, [Defendant] could have superficial discussions about legal matters, based on his general knowledge about courts. He could also, in the moment, discuss a particular item for which he had just been provided information. However, when asked to combine multiple pieces of data over a sustained period or when questioned about the specifics of his case, he often replied, "I don't know."

> . . . .

> [Defendant]'s cognitive impairments likewise interfered with his ability to assist properly in his defense. Without foundational knowledge about his charges, [Defendant] would be unable to follow testimony for contradictions and errors, bring relevant information to his attorney's attention, testify and be cross-examined, understand instructions and advice, and make rational and informed decisions about the handling of his case. [Defendant] had some insight about his deficits, and both he and [Defendant's counsel] acknowledged that his memory problems were an obstacle to effective collaboration.

(*Id*. at 9, 11-13).

## C.    The Competency Hearing

On January 24, 2020, the court held a competency hearing. (Doc. # 134). The court heard from

Dr. Griffith, Dr. Zhong, and Defendant. (*Id*. at 7-8, 13, 63-74). The court, Defendant's counsel, and

the Government engaged in discussions with Defendant about a few aspects of his life, including the

5

charges in the Indictment and his daily routines. (*Id*. at 13-57).

Defendant's counsel questioned Defendant about the nature of legal proceedings. His Reponses were consistent with the responses in Dr. Zhong's report and show that Defendant has an abstract understanding of criminal proceedings. For example, when the court asked if Defendant "knew what the consequences are if a person enters a guilty plea," he responded (in part) "I guess the consequences are [I] don't have to go to a trial to determine if I am guilty." (*Id*. at 18). The examination also indicated that he understands that a consequence of pleading guilty is waiving certain rights, including the opportunity to scrutinize witnesses and to require the government to prove his guilt beyond a reasonable doubt. (*Id*. at 20-21).

The Government asked Defendant about his medical practice. (*Id*. at 36). Defendant told the court he had a medical license and a DEA license to prescribe controlled substances; he worked at the Cindy Dunn Clinic and certain urgent care clinics from 2010-2015. He quit practicing medicine in 2018, where (at the time) he operated a "non-prescribing type of practice." (*Id*. at 35-37, 53). Defendant's counsel also questioned Defendant about his medical practice for the period in the Indictment— Defendant was able to recall the Cindy Dunn clinic and that he was paid an hourly fee to treat patients. (*Id*. at 31-32). But, he was unable to recall the names of patients and the other doctors he worked with at the clinic. (*Id*. at 32).

The Government questioned Defendant about his daily routine and lifestyle. (*Id*. at 38-46). Defendant recited his daily medications, which are administered with the help of his daughter, and the conditions the medicines are prescribed to treat. (*Id*. at 38). Defendant spends most his days on the computer, where he watches YouTube® videos about "nature, archeological studies, astronomy, some pretty basic physics and atomic physics, [and] subatomic physics …." (*Id*. at 43). He also can dress himself, aid his wife into her wheelchair and recliner, make his breakfast, and keep track of his schedule

with his daughter's aid.[2] (*Id*. at 41, 44).

Finally, the court asked Dr. Zhong and Dr. Griffith if either of them wanted to inform the court of any matters beyond what are in their reports. (*See id*. at 62). Dr. Zhong told the court that "[Defendant] has the ability to understand the meaning of a guilty plea, that he understands the consequences to him of entering a guilty plea." (*Id*. at 70). He can "understand and work with information provided in the moment, and perhaps maybe an hour or two later." (*Id*. at 71). But, "there is a substantial risk that [Defendant] would not continue to … hold that information and manipulate it in a rational fashion for … three or more hours." (*Id*.). For example, Defendant could understand "at [the] time" the information that was provided by Dr. Zhong but could not recall the information "when [Dr. Zhong] circled back" to the topic. (*Id*.). Dr. Griffith added that "[Defendant might have difficulties being able to keep track of what's going on during the trial and to be able to assist [defense counsel] with challenging witnesses." (*Id*. at 63).

### D.    The Government's Objection

The Government filed its Objection to the R&R. (Doc. # 140). The Government argues that Defendant's dementia does not render him incompetent because**,** based on his responses to

---

[2] Although Defendant informed the court of his relative independence, there is evidence indicating that he embellishes his abilities. Dr. Zhong's interview with Defendant's daughter Shelly shed light on his day-to-day life:

> She clarified some of the statements Dr. Buckingham made about his independence. She said that although he "does fix his own food sometimes, I help him getting food...He has forgotten to shut off the stove and burned pans, so I've asked him not to use the stove if I'm not there." She added, "I wash clothes and wash dishes...I help them pay the bills...I have power of attorney over him since November or December [2018] because it was getting to where...[with] decision-making things, he may not think correctly, and I have to remind him—for example, paying bills, getting taxes together, helping him organize things, a lot of financial documents." She went on to say that she has taken on increasing amounts of responsibility for financial matters. In addition, she assists with picking up prescriptions and reminding her father to take his medications. Although Dr. Buckingham has a calendar on the computer, Ms. Buckingham noted that "he wasn't putting down the right information that they were telling him on the phone: He was trying to keep up with mom's appointments and his, and they were getting all messed up...I was calling the offices to...double-check."

(Doc. # 70 at 6).

questions at the competency hearing, Defendant is "capable of consulting with his lawyer regarding the process of evaluating patients and prescribing medications to individual patients, as charged in the indictment." (*Id*. at 1, 5). And, Defendant is a "highly educated and intellectual individual" who "fully understands the charges and penalties, the legal process and legal proceedings, the role of counsel, the jury and the judge; courtroom decorum; the distinction between entering a pela and the risk of the trial and his Constitutional rights." (*Id*.). The Government asks the court to deem Defendant "competent to enter a guilty plea to one count of the Indictment." (*Id*. at 7).

## III.   Legal Standards and Procedures

The procedures for determining competency in a federal case are governed by both statutory and constitutional requirements. The Fifth Amendment's Due Process Clause requires that a criminal defendant may not be tried unless he is mentally competent. *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *see Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Drope v. Missouri*, 420 U.S. 162, 172-73 (1975); *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005); *James v. Singletary*, 957 F.2d 1562, 1569-70 (11th Cir. 1992). Thus, in order to conclude that a defendant is competent to stand trial, a court must make two findings: (1) the defendant has "sufficient present ability to consult with [*i.e.*, "to assist"] his lawyer with a reasonable degree of rational understanding"; and (2) the defendant has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam); *see Drope*, 420 U.S. at 172.

In this case, two points are not at issue: The parties do not dispute that (1) Defendant is suffering from dementia;[3]  and (2) Defendant does understand the nature of the legal proceedings.

---

[3]  The Government has not challenged this conclusion. (*See* Docs. # 136, 140).

Indeed, Defendant demonstrated to the experts and to the court that he (at least to a limited extent) understands the charges against him, the various parties in criminal proceedings and their roles, and the consequences of a guilty verdict or a guilty plea.[4]  (*See* Docs. # 136 at 20, 134 at 72, 70 at 10). What remains at issue is whether Defendant can assist in his defense with a reasonable degree of rational understanding. The court finds, however, that Defendant does not have the present ability to assist his counsel in his defense—his mental condition renders him unable to recall events, assist in evaluating the veracity of the claims against him, and rationally undertake the decisions he must make to plead guilty or proceed to trial, which include the decision to enter a guilty plea, waive his rights, and whether to testify on his own behalf. Thus, the Government's Objections to the R&R are due to be overruled.

## A.       Standard of Review

A district court judge may refer to a magistrate judge "any pretrial matter pending before the court." 28 U.S.C. § 636(b). Within fourteen days of being served with a copy of a magistrate's R&R on a pretrial matter, any party may object to the R&R to the assigning district judge. *Id*. For "those portions of the report or specified proposed findings or recommendations to which objection is made," the district judge must evaluate such objections *de novo*. *Id*. § 636(c); *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

---

[4] Indeed, neither party has objected to the Magistrate's conclusion that "the court is satisfied that the defendant *does* understand the importance of the present proceedings and his role in those proceedings." (*See* Doc. # 136 at 20) (emphasis in original). Defendant's counsel stated at the January 24, 2020 evidentiary hearing that he "agreed with [the experts] that [Defendant] probably understands functionally what the court does; functionally what it means to plead guilty. He understands that if he entered a plea of guilty he would be giving up certain rights." (Doc. # 134 at 77).

### B.      Procedural Requirements to Determine Competency

When a criminal defendant's competency is in question, Section 4241(d) requires the court to undertake an inquiry and make a preliminary finding as to whether the evidence shows that the defendant is, in fact, incompetent. 18 U.S.C. § 4241(d). The court must conduct a competency hearing at which the defendant (represented by counsel) may testify and call and confront witnesses. *See id.* §§ 4241(a), 4241(c), 4247(d). The district court may order a psychiatric or psychological examination of the defendant before the competency hearing. *Id.* § 4241(b). These procedures were followed in this case.

If the court finds by a preponderance of the evidence that Defendant is suffering from a mental disease or defect rendering him incompetent to stand trial, the court "shall commit [him] to the custody of the Attorney General." *Id.* § 4241(d). The Attorney General "shall hospitalize [Defendant] for treatment in a suitable facility for … a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." *Id.* § 4241(d)(1). The court notes that this commitment is not discretionary because the clear language of the statute mandates that the court "shall" commit an incompetent defendant to the Attorney General.[5] *Id.*; *United States v. Shawar*, 865 F.2d 856, 860 (7th Cir. 1989) ("[O]nce a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him.");

---

[5]  Defendant filed a Motion to Dismiss or for Alternative Relief (Doc. # 104). As Defendant accurately states, dismissal under Rule 48 is a mechanism of prosecutorial discretion and not a decision for this court. *See In re Flynn*, 961 F.3d 1215, 1220 (D.C. Cir. 2020) ("the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges."). Further, the court's discretion under 18 U.S.C. § 3553 applies only to sentencing. For these reasons, Defendant's Motion to Dismiss or for Alternative Relief (Doc. # 104) is due to be denied.

*United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990) (agreeing with the Seventh Circuit in *Shawar*).

### C.      Burden of Proof

When it passed Section 4241, Congress was silent on whether the burden of establishing competency by a preponderance of the evidence lies with the Defendant or the Government. *See* 18 U.S.C. §§ 4241, 4247; *United States v. Richardson*, 2009 WL 1490552, at *3 (M.D. Fla. May 27, 2009) (observing that "[w]hich party has the burden of proof concerning competency is not fully decided"); *United States v. Gigante*, 996 F. Supp. 194, 199 (E.D.N.Y. 1998) ("Legislative history [on § 4241] does little to provide additional guidance."). In *Cooper v. Oklahoma*, 517 U.S. 348 (1996), the Supreme Court briefly addressed this issue, but did so in dictum while referring to the various burdens of proof required among the states.[6] *See generally*, *United States v. Patel*, 524 F. Supp. 2d 107, 112 (D. Mass. 2007) (finding that statement in *Cooper* assigning burden of proof was not binding as the Court has not referred to it again).

On one hand, the Eleventh Circuit has interpreted *Cooper* to "arguably" place the burden for proving competency on the moving party. *See United States v. Izquierdo*, 448 F.3d 1269, 1277 (11th Cir. 2006) ("… the Supreme Court has stated, albeit in dicta, that the burden of establishing incompetence rests with the defendant" … "the relevant competency statute [18 U.S.C. § 4241] arguably contemplates that the burden will lie with the party making a motion to determine competency."); *United States v. Bradley*, 644 F.3d 1213, 1268 (11th Cir. 2011) (placing the burden of proving incompetence on the defendant does not violate due process); *United States v. Rothman*,

---

[6] The Court stated in *Cooper* that "a number of States place no burden on the defendant at all, but rather require the prosecutor to prove the defendant's competence to stand trial once a question about competency has been credibly raised. The situation is no different in federal court. Congress has directed that the *accused* in a federal prosecution must prove incompetence by a preponderance of the evidence." 517 U.S. at 361-62 (emphasis added).

2010 WL 3259927, at *6 n.4 (S.D. Fla. Aug. 18, 2010) (finding that § 4241 "does not speak in terms of whether the government or defendant has the burden of proof; it only mandates that whoever is seeking to prove incompetence has the burden").

But, on the other hand, the Eleventh Circuit has not overruled its precedent that "[t]here can be no question that in federal criminal cases the government has the burden of proving defendant competent to stand trial."[7] *Izquierdo*, 448 F.3d at 1277 (discussing *United States v. Makris*, 535 F.2d 899, 906 (5th Cir.1976)).[8] Regardless of where the burden properly lies in the circumstances of this case, for the reasons stated in this opinion, the court is satisfied by a preponderance of the evidence that Defendant is incompetent to stand trial. 18 U.S.C. § 4241(d); *See, e.g., United States v. Talley*, 2010 WL 4791821, at *10 (S.D. Fla. Nov. 18, 2010) ("Based on the narrow holding of *Izquierdo* and because *Izquierdo* did not overrule *Makris*, the undersigned will place the burden of proof on the government.").

### D.    Competency Standard

The Supreme Court set forth the test for competency to stand trial in *Dusky*. 362 U.S. at 402. Competency depends upon whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Id*. The Court further elaborated on the

---

[7]    The Eleventh Circuit in *Izquierdo* did not resolve the burden of proof conundrum. Rather, it narrowly held that "in the particular circumstances of this case [where the defendant was moving to withdraw a guilty plea], the district court did not err in placing the burden of proof on [defendant] as to his own motion to withdraw his guilty plea based on incompetency." 448 F.3d at 1278. The court distinguished *Makris* (assigning the burden on the government for its pre-trial motion for incompetence) from the facts in *Izquierdo* and held that *Makris* did not control. *Id*. The court also found support in the fact that the *Makris* court was applying a prior version of the competency statute, which "placed more emphasis on the government's role in filing an incompetency motion." *Id*. (citing 18 U.S.C. § 4244 (1949)).

[8]    Fifth Circuit precedent before 1981 is binding on this court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

*Dusky* standard in *Drope*, where it stated that it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, *to consult with counsel, and to assist in preparing his defense* may not be subjected to a trial." *Drope*, 420 U.S. at 171 (emphasis added); *see Indiana v. Edwards*, 554 U.S. 164, 169-70 (2008) (internal citations omitted) ("The two cases that set forth the Constitution's 'mental competence' standard, [*Dusky* and *Drope*], specify that the Constitution does not permit trial of an individual who lacks 'mental competency.'" "*Drope* repeats [the *Dusky*] standard" … that focuses directly upon a defendant's "present ability to consult with his lawyer" and an ability "to assist [counsel] in preparing his defense"); *see also Godinez*, 509 U.S. at 396 (quoting *Drope*'s language prohibiting a criminal defendant from being tried if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense"); *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1256 (11th Cir. 2002) (internal quotations omitted) (explaining to be considered competent for trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and he must have a "rational and factual understanding of the proceedings against him."); *Watts v. Singletary*, 87 F.3d 1282, 1286 (11th Cir. 1996) (stating competence to assist counsel at trial "is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right of effective assistance of counsel."); *United States v. Saingerard*, 621 F.3d 1341, 1342 (11th Cir. 2010) (noting the continuing viability of *Dusky*).

Congress codified the *Dusky/Drope* standard.[9]  18 U.S.C. § 4241(d) (2006). The federal competency statute outlines a two-prong standard:

---

[9]  *See* Insanity Defense Reform Act of 1984, Sen. R. No. 98-225, at 236 (1983), reprinted in 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3418 ("This test of competency, in essence, adopts the standards set forth by the Supreme Court in *Dusky*."); *United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1233 (10th Cir. 2009) (describing

> If, after the hearing, the court finds by a *preponderance of the evidence* that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable
>
> [1] to understand the nature and consequences of the proceedings against him
>
> or
>
> [2] to assist properly in his defense the court shall commit the defendant to the custody of the Attorney General [for hospitalization].

*Id.* (emphasis added and spacing modified). In making this determination, "the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's [behavior]." *United States v. Mackovich*, 209 F.3d 1227, 1232 (10th Cir. 2000)).

The plain language of the statute requires that the competency inquiry go beyond a medical diagnosis. Even though incompetency is predicated on the existence of a mental disease or defect, the standard for evaluating a defendant's competency to stand trial is not a medical inquiry, but a legal determination. *Makris*, 535 F.2d at 905, 907 ("The question of competency, of course, is a mixed question of law and fact" but "[i]n the final analysis, the determination of competency is a legal conclusion; even if the experts' medical conclusions of impaired ability are credited, the judge must still independently decide if the particular defendant was legally capable of reasonable consultation with his attorney and able to rationally and factually comprehend the proceedings against him."). In other words, it is of no moment that an expert simply opines that the defendant has a mental defect or, for that matter, even that a court concludes that is the case. A defendant is incompetent only if the court concludes a mental defect suffered by the defendant is such that he lacks the "sufficient present ability to consult with his lawyer with a reasonable degree of rational

---

Senate Judiciary Report on 18 U.S.C. § 4241(a) that federal competency statute was based on Pate's procedural protections); *United States v. Wiggin*, 429 F.3d 31, 37 n.8 (1st Cir. 2005).

understanding" and does not have a "rational and factual understanding of the proceedings against him.'" *Wright*, 278 F.3d at 1256; *Saingerard*, 621 F.3d at 1343; *United States v. Brooks*, 2010 WL 2267030, at *4 (M.D. Ala. June 7, 2010). Thus, "a defendant can be competent to stand trial despite being mentally ill and similarly a defendant can be found incompetent to stand trial without being mentally ill." *United States v. Chandler*, 2020 WL 2735917, at *3 (M.D. Fla. May 5, 2020), *report and recommendation adopted*, 2020 WL 2735424 (M.D. Fla. May 26, 2020). Indeed, "competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers." *United States v. Hogan*, 986 F.2d 1364, 1373 (11th Cir. 1993). Practically speaking, what this means is that Defendant may be found competent even though it is undisputed that he has dementia. *See Ferguson v. Sec'y, Florida Dep't of Corr.*, 716 F.3d 1315, 1340 (11th Cir. 2013) (finding that the nature and severity of petitioner's mental illness do not render his "perception of reality so distorted" that he cannot adequately appreciate the connection between his crimes and impending execution"); *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 482 (11th Cir. 2012) (affirming the district court's finding that a diagnosis of schizophrenia is not enough to show that a defendant was incompetent to enter a guilty plea or stand trial).

## IV.    Analysis

In order to accept the Government's argument that Defendant is competent, the court would have to disagree with the two (and only) trained and competent expert witnesses in this case. Of course, the court fully understands that it (not the experts) must make a legal determination whether Defendant's dementia (which all experts agree he suffers from) renders him mentally unable to assist counsel in his defense with a reasonable degree of rational understanding. *Dusky*, 362 U.S. at 402; *Godinez*, 509 U.S. at 402 (rejecting multiple standards in favor of the "*Dusky* formulation" as the standard for determining competency). Thus, the court must make a determination regarding

two matters: first, what assistance Defendant must provide his counsel; and second, whether he can provide that assistance with a reasonable degree of rational understanding.

It is important to discuss the roles of defense counsel and defendant in a trial -- as well as the decisions that are solely for a defendant to make -- when deciding whether defendant can assist his counsel.[10]  As already discussed, a defendant is not incompetent because he does not understand the "intricacies" of a legal defense. *Hogan*, 986 F.2d at 1373. There are many aspects of representation that are well-understood to be in counsel's discretion to act unilaterally. For example, "the lawyer has—and must have—full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). Conduct of the trial includes a lawyer's decision to put forth or withhold witnesses, to choose which evidence to present, to make evidentiary or procedural objections, and to assert constitutional challenges. *Id*; *Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, J., concurring). Indeed, no one can expect defendants to make these types of "on the fly" decisions in live proceedings. *Wainwright*, 433 U.S. at 93 (Burger, J., concurring) (internal quotation marks omitted) (noting that "(e)ven the intelligent and educated layman has small and sometimes no skill in the science of law"); *Jones v. Barnes*, 463 U.S. 745, 760 (1983) ("From the standpoint of effective administration of justice, the need to confer decisive authority on the attorney is paramount with regard to the hundreds of decisions that must be made quickly

---

[10]  The importance of defendant's role to properly assist counsel in navigating criminal proceedings is unsurprising—if counsel is ineffective, then a defendant's Sixth Amendment rights are violated. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Ryan v. Gonzales*, 568 U.S. 57, 65 (2013) ("It stands to reason that the benefits flowing from the right to counsel at trial could be affected if an incompetent defendant is unable to communicate with his attorney."); *Riggins v. Nevada*, 504 U.S. 127, 144 (1992) (Kennedy, J., concurring) ("We have held that a defendant's right to the effective assistance of counsel is impaired when he cannot cooperate in an active manner with his lawyer."). That is not to say, however, that the right to counsel is per se violated if a defendant is incompetent to stand trial and proceeds nonetheless; the right to counsel is protected by the Sixth Amendment while the requirement that the state try only competent defendants is found under due process. *Gonzales*, 568 U.S. at 65 ("Notwithstanding the connection between the right to competence at trial and the right to counsel at trial, we have never said that the right to competence derives from the right to counsel.").

in the course of a trial.").

There are, however, consequential decisions that counsel cannot make without the well-reasoned input of the defendant. These include "whether to plead guilty, waive trial by jury, testify on his own behalf, or take an appeal." *Florida v. Nixon*, 543 U.S. 175, 187-88 (2004) (internal quotation marks omitted); *but see Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) ("We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal."). Defendant must also have the present ability "to confront hostile witnesses and generally to comprehend the evidence presented against him at trial." *United States v. Helmsley*, 733 F. Supp. 600, 605 (S.D.N.Y. 1989). And, a defendant ultimately has the decision to reject counsel and defend himself. *Faretta v. California*, 422 U.S. 806, 819 (1975).

While the law is well settled as to what the proper standard to determine competency, the definition of "rational understanding" remains ambiguous and "difficult to define." *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007); *see Ferguson*, 716 F.3d at 1318 ("The bottom line of the *Panetti* decision is that there is not yet a well-defined bottom line in this area of the law.").[11] However, it is clear that a rational understanding is different from (and requires more) than a factual understanding. For example, it is not enough to show that the defendant knows facts such as the day of the week or the name of the current President. Indeed, Defendant could recall President Trump but not President Obama or President George W. Bush. (Docs. # 134 at 42, 70 at 7). *Dusky* indicates that competency requires something more. "[I]t is not enough to find that the

---

[11] Some Eleventh Circuit cases have addressed the issue without providing a definition for the term. *See e.g., Bundy v. Dugger*, 850 F.2d 1402, 1409-10 (11th Cir. 1988) (finding a defendant to have a rational understanding of the proceedings against him where the defendant expressed displeasure at one of the trial judge's instructions, evaluated some of the evidence against him, and criticized the state's closing argument for referring to facts not in evidence); *Singletary*, 995 F.2d at 188 (finding rational understanding where defendant participated in formulating defense strategy with attorneys).

defendant is oriented to time and place and has some recollection of events." 362 U.S. at 402 (internal quotation marks omitted). Thus, based on the decisions that a defendant must undertake to assist counsel, a competent defendant must be able to make a "reasoned choice" among the alternatives available to him when confronted with such crucial questions as whether he should testify, waive a jury trial, cross-examine witnesses, and put on a defense. *Id.* at 397-98.

### A.    Defendant Does Not have Sufficient Present Ability to Consult with and Assist his Lawyers with a Reasonable Degree of Rational Understanding

The Government challenges the R&R based on Defendant's behavior at the competency hearing. (Doc. # 140). The Government argues that because Defendant still "maintains an understanding of medicine," he is "capable of consulting with his lawyer with a reasonable degree of rational understanding regarding the process of evaluating patients and prescribing medications to individual patients, as charged in the Indictment." (*Id.* at 4-5). The Government contends that this conclusion is supported by the following facts: Defendant has access to discovery, recalls that he used to have a license to prescribe controlled substances, and can describe his current medications and the process of prescribing medicine.[12] (*Id.* at 3-5). Further, according to the

---

[12]  The Government cites the following statements of Defendant to support its argument:

[Government]: Do you know what medications you are currently taking?

[Defendant]: I know two of them, and there is one that was prescribed that I take, it's an antidepressant. I take an aspirin, and I take Eliquis tablet, which is to prevent blood clotting in my heart. I have what's called atrial fibrillation, and the blood doesn't circulate through the receiving chambers as it should. and it's prone to get stuck in a particular part of it and cause a clot and the clot breaks loose. And if it goes to your head, you are in bad shape. It can go other places to kidneys and your toenails and all sorts of places. But the ones that they -- the medicines are hopefully to prevent that clot from forming first and then breaking loose and going up and clogging up the arteries in the head.

. . . .

The court: so tell me how you would [practice medicine], how you do your assessment, your evaluation [of patients]?

The defendant: well, you are in an Office setting. And a patient comes in, you make initial contact,

Government, Defendant's intellectual curiosity -- exhibited by his hobby of watching YouTube videos -- also supports a finding that Defendant is competent to stand trial. (*Id.* at 6).

The behavior the Government cites does show that Defendant can recall certain facts (particularly older facts) and perform abstract reasoning. For example, Dr. Zhong reported that Defendant could "provide a detailed timeline … up until the 1980s" but had "difficulty recalling details of more recent events and conversations." (Doc. # 70 at 7). His performance of these tasks is consistent with his ability to recall legal proceedings and the roles that various parties play in legal proceedings.[13]  (Doc. # 70 at 8, 10).

But, Defendant's limited proficiencies do not gain as much traction as the Government would suggest. As already discussed and required by *Dusky*, the ability to recall routine facts or abstractly reason is not all that Defendant must do to be found competent. 362 U.S. at 402. Rather, Defendant must be able to scrutinize the evidence and testimony presented during trial. *See Nixon*, 543 U.S. at 187-88; *see also Dusky*, 362 U.S. at 402. He must also be able weigh the credibility

---

they have already filled out some paperwork. You have accepted them. Come in, you shake hands; that's part of the physical exam right there, all right, is to look at them and make physical contact and then go through the usual interview process depending on the situation and the setting.

If I am working at Cindy Dunn clinic, that's basically a pain management clinic, supposedly. All right, if I am working at urgent care, you still go through the same process. It's just a little bit different setting. Make physical contact, eye-to-eye contact. You're alert, your fingers tell you stuff, your eyes tell you stuff, your ears tell you stuff. Your nose tells you stuff about this patient. And then you can go into either history or the physical examination of the particular reason that the person is there. Doctor, I have got a cold. I sprained my ankle. I need a refill of a medicine, my doctor's out of town, or a whole variety of things like that. That hasn't changed in the way, mode of practice.

(Doc. # 134 at 38, 55-56; *see* Doc. # 140 at 3-4).

[13]  Dr. Griffith's testing showed that Defendant was impaired in certain cognitive functions more than others. For example, Defendant's language, attention, and memory were all "impaired" to varying degrees while his abstraction and judgment were "normal." (Doc. # 57 at 7).

and the veracity of that evidence, understand the implications of the evidence, and assess the risks and benefits between going to trial and entering a guilty plea. *See Dusky*, 362 U.S. at 397-98.

The court finds that Defendant cannot do these things with a rational understanding. Dr. Zhong observed Defendant engage with his defense counsel and concluded:

> [Defendant's] memory impairments prevent him from participating in a meaningful dialogue about his case. He had difficulty retaining and assimilating information pertaining to his legal situation. Without an understanding of his charges, he could not go on to discuss legal strategy, evaluate aspects of his case, or explain the rational[e] behind his conclusions.

(Doc. # 70 at 11). And, when pressed on this issue by Judge Ott at the competency hearing, Dr. Zhong quantified Defendant's abilities: "he certainly can understand and work with information provided to him in the moment, and perhaps maybe an hour later or two hours later … he would not be able to continue to hold that information and manipulate it in a rational fashion for, say, three or more hours." (*Id*. at 71). If Defendant could not engage with Dr. Zhong and Dr. Griffith about his case in an evaluation session, that certainly suggests that he would be unable to perform his role at a trial. And, a trial in this case would certainly consist of multiple days of both sides presenting evidence, cross-examining witnesses, and offering arguments to the jury. Thus, the preponderance of the evidence indicates that Defendant does not have a sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding. It follows that his functioning is impaired at a level below the *Dusky* standard that is required to stand trial.

Finally, the Government argues that "Defendant's ability to consult with counsel during a lengthy trial … may be different [than] his ability to consult with counsel and consider a more limited plea agreement to one count of the Indictment." (Doc. # 140 at 5). Thus, the Government contends that "defendant is competent to proceed to a plea hearing." (*Id*. at 6). But, this argument fails. As the Government acknowledged in its Brief on Competency (Doc. # 133), "the standard

for evaluating competency at a plea hearing or trial remains the same."[14] (Doc. # 140 at 3; *see* Doc. # 133 at 1). This is correct, *Godinez v. Moran*, 509 U.S. 389, 482 (1993), and at the same time unsurprising. The decision to plead guilty -- that is, to assess the government's evidence, the charges against him, whether he should testify or cross-examine witnesses, and the benefits or drawbacks of waiving his constitutional rights -- requires the same types of decisions of a defendant at trial.[15]  *Id.* at 398-99.

## V.    Conclusion

After thoroughly reviewing all available evidence, the court concludes that the record makes it clear that Defendant does currently suffer from a mental disease, and that his mental disease renders him incompetent to stand trial. Accordingly, Defendant is committed to the custody of the Attorney General for hospitalization to restore competency. The Government's Objection to Report and Recommendation (Doc. # 140) is due to be overruled.

A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this December 9, 2020.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[14]  Judge Ott and Defendant agreed with this standard. (Docs. # 132, 136).

[15] While the competency standard is not higher, the court notes that there is a second requirement to plead guilty in addition to competency: that the defendant "knowingly and voluntarily" waived his right to trial by jury. *United States v. Greene*, 767 F. App'x 793 (11th Cir. 2019); *Godinez,* 509 U.S. at 400 ("A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary.").